## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF TEXAS

PULTE HOMES, INC., a Georgia corporation;
and PULTE HOMES OF TEXAS, L.P., a
Texas corporation,

        Plaintiffs,

   v.

AMERISURE INSURANCE COMPANY, a
Michigan corporation; FIRST SPECIALTY
INSURANCE CORPORATION, a Missouri
corporation; MARYLAND CASUALTY
COMPANY, a Maryland corporation; OHIO
CASUALTY INSURANCE COMPANY, an
Ohio corporation; and DOES 1 through 10,
inclusive,

        Defendants.

Civil Action No. 4:17-cv-00613

**JURY DEMANDED**

## PLAINTIFFS' COMPLAINT

Plaintiffs Pulte Homes, Inc., and Pulte Homes of Texas, L.P. (collectively, "Plaintiffs" or "Pulte") allege as follows:

## I.  PARTIES

1.　　　Plaintiff Pulte Homes, Inc. is a Georgia corporation with its principal place of business in Georgia.

2.　　　Plaintiff Pulte Homes of Texas, L.P. is a Texas corporation with its principal place of business in Texas.

3.　　　Pulte is informed and believes, and on that basis alleges, that Defendant First Specialty Insurance Corporation ("First Specialty") is a Missouri corporation with its principal place of business in Missouri.

4.　　　Pulte is informed and believes, and on that basis alleges, that Defendant Amerisure Insurance Company ("Amerisure") is a Michigan corporation with its principal place

Complaint – Page 1

of business in Michigan.

5.        Pulte is informed and believes, and on that basis alleges, that Defendant Ohio

Casualty Insurance Company ("Ohio Casualty") is an Ohio corporation with its principal place

of business in Ohio.

6.        Pulte is informed and believes, and on that basis alleges, that Defendant Maryland

Casualty Company ("Maryland") is a Maryland corporation with its principal place of business

in Illinois.

7.        Pulte is unaware of the true names and capacities of DOES 1 through 10,

inclusive, whether individual, corporate, associate or otherwise, and therefore sues these

defendants by fictitious names.  Pulte is informed and believes, and on that basis alleges, that

each of the fictitiously named defendants is in some manner responsible for the damage to Pulte

as alleged in this Complaint.  Pulte will amend this Complaint to show the true names and

capacities of these fictitiously named defendants after the same has been ascertained.

8.        First Specialty, Amerisure, Ohio Casualty, Maryland, and Does 1-10, Inclusive,

are hereinafter collectively referred to as "Defendants."

## II.  JURISDICTION AND VENUE

9.        This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C.

§ 1332 because the matter in controversy exceeds the sum of $75,000.  As set forth more fully

below, the amount in controversy consists of amounts that Defendants owe Pulte for defense fees

and costs incurred by Pulte in the *Main Street Village* Action, consequential damages resulting

from Defendants' breach of contract, and extra-contractual damages, including Pulte's attorney's

fees incurred in prosecuting this action, and punitive damages.

10.        Plaintiffs are citizens of either Georgia or Texas; Defendants are citizens of either

Missouri, Michigan, Ohio, Maryland, or Illinois.

11.     This Court therefore has diversity jurisdiction under 28 U.S.C. § 1332 in that this is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of costs and interest, seventy-five thousand dollars.

12.     Venue is proper in the Eastern District of Texas because all or a substantial part of the events and omissions occurred there.  Pulte is informed and believes and thereon alleges that all Defendants reside in Texas because they are subject to personal jurisdiction in the state with respect to this action.

## III.  FACTUAL ALLEGATIONS

### The Main Street Village Project

13.     Pulte is a homebuilder that participated in the construction of a residential development known as Main Street Village, located in Denton County, Texas.

14.     Pulte performed no work on the homes at Main Street Village; instead, all work was performed by subcontractors.  On information and belief, work at Main Street Village took place from 2004-2007.

15.     Nortex Foundation Designs, Inc. ("Nortex") performed foundation design at Main Street Village.

16.     The Kaufman Company ("Kaufman") performed foundation construction work at Main Street Village.

17.     Texas Tealstone Resale, L.P. d/b/a/ Tealstone Resale, L.P. ("Tealstone") performed foundation construction work at Main Street Village.

18.     Holden's Excavating ("Holden's") performed grading work at Main Street Village.  Nortex, Kaufman, Tealstone, and Holden's are collectively referred to as the

"Subcontractors."

## The Nortex Policy

19.     Nortex performed work at Main Street Village pursuant to a written subcontract that it entered into with Pulte.

20.     This subcontract required Nortex to maintain commercial general liability insurance containing a per occurrence limit of at least $1,000,000, and to name Pulte, its subsidiaries and affiliates, and their respective directors, officers, employees, and agents as "additional insureds" under those insurance policies.

21.     Nortex obtained the following commercial general liability policy from First Specialty Insurance:

| Insurer | Policy Number | Policy Periods | Additional Insured |
|---------|---------------|----------------|--------------------|
| First Specialty | IRG57003 | 05/20/05-05/20/06 | Pulte Homes of Texas, L.P. |

22.     The Nortex Policy was endorsed to cover Pulte as an "additional insured" with respect to liability arising out of Nortex's work.

23.     The coverage afforded under the policy First Specialty issued to Nortex requires Defendant First Specialty to defend Pulte against all claims that create potential liability for covered property damage or bodily injury.

## The Kaufman Policy

24.     Kaufman performed work at Main Street Village pursuant to a written subcontract that it entered into with Pulte.

25.     This subcontract required Kaufman to maintain commercial general liability insurance containing a per occurrence limit of at least $1,000,000, and to name Pulte, its subsidiaries and affiliates, and their respective directors, officers, employees, and agents as

"additional insureds" under those insurance policies.

26.     Kaufman obtained the following commercial general liability policy from

Amerisure Insurance:

| Insurer | Policy Number | Policy Periods | Additional Insured |
|---|---|---|---|
| Amerisure | GL2056945 | 9/30/06-9/30/09 | Pulte Homes, Inc., and its subsidiaries and affiliates |

27.     The Kaufman Policy was endorsed to cover Pulte as an "additional insured" with

respect to liability arising out of Kaufman's work.

28.     The coverage afforded under the policy Amerisure issued to Kaufman requires

Defendant Amerisure to defend Pulte against all claims that create potential liability for covered

property damage or bodily injury.

**The Tealstone Policies**

29.     Tealstone performed work at Main Street Village pursuant to one or more written

subcontracts that it entered into with Pulte.

30.     These subcontracts required Tealstone to maintain commercial general liability

insurance containing a per occurrence limit of at least $1,000,000, and to name Pulte, its

subsidiaries and affiliates, and their respective directors, officers, employees, and agents as

"additional insureds" under those insurance policies.

31.     Tealstone obtained the following commercial general liability policies:

| Insurer | Policy Number | Policy Periods | Additional Insured |
|---|---|---|---|
| Ohio Casualty | BKW (08) 53649039 | 09/30/07-04/11/08 | Pulte Homes of Texas, L.P. |
| Ohio Casualty | BKO (07) 52988052 | | |
| Ohio Casualty | BKO (06) 52988052 | 09/30/05-09/30/06 | Pulte Homes of Texas, L.P. |
| Ohio Casualty | BKA (05) 52988052 | 09/30/04-09/30/05 | Pulte Homes of Texas, L.P. |

| Ohio Casualty | BKA (04) 52988052 | 09/30/03-09/30/04 | Pulte Homes, Inc.; Pulte Homes of Texas, L.P. |
| Ohio Casualty | BKA (03) 52988052 | 09/30/02-09/30/03 | Pulte Homes, Inc.; Pulte Homes of Texas, L.P. |
| Amerisure | CPP 2053129 | 04/09/07-04/09/08 | Pulte Homes, Inc. |

32.     The Tealstone Policies were endorsed to cover Pulte as an "additional insured" with respect to liability arising out of Tealstone's work.

33.     The coverage afforded under the policy Ohio Casualty issued to Tealstone requires Defendant Ohio Casualty to defend Pulte against all claims that create potential liability for covered property damage or bodily injury.

34.     The coverage afforded under the policy Amerisure issued to Tealstone requires Defendant Amerisure to defend Pulte against all claims that create potential liability for covered property damage or bodily injury.

**The Holden's Policies**

35.     Holden's performed work at Main Street Village pursuant to one or more written subcontracts that it entered into with Pulte.

36.     These subcontracts required Holden's to maintain commercial general liability insurance containing a per occurrence limit of at least $1,000,000, and to name Pulte, its subsidiaries and affiliates, and their respective directors, officers, employees, and agents as "additional insureds" under those insurance policies.

37.     Holden's obtained the following commercial general liability policies:

| Insurer | Policy Number | Policy Periods | Additional Insured |
| --- | --- | --- | --- |
| Ohio Casualty | BHO 53285706 | 11/01/06-11/01/09 | Pulte Homes, Inc., and its subsidiaries and affiliates |
| Maryland | SCP 38573920 | 07/27/03-07/20/04 | Pulte Homes of Texas, L.P. |

38.     The Holden's Policies were endorsed to cover Pulte as an "additional insured" with respect to liability arising out of Kaufman's work.

39.     The coverage afforded under the policy Ohio Casualty issued to Holden's requires Defendant Ohio Casualty to defend Pulte against all claims that create potential liability for covered property damage or bodily injury.

40.     The coverage afforded under the policy Maryland issued to Holden's requires Defendant Maryland to defend Pulte against all claims that create potential liability for covered property damage or bodily injury.

## The *Main Street Village* Action

41.     On September 22, 2010, the Main Street Village Homeowners Association filed a lawsuit in Denton County, Texas, *Main Street Village Homeowners Association, Inc., v. Pulte Homes of Texas, L.P.*, Cause No. 2010-20309-158, against Pulte alleging, among other things, defective construction affecting exterior cladding, structural and framing components, concrete flatwork and stairs, grading and draining, and retaining walls, and that Pulte is liable for damages because of this property damage.  Accordingly, the allegations and the evidence in the *Main Street Village* Action create a potential for an award of covered damages, triggering each Defendants' duty to defend and indemnify Pulte against the *Main Street Village* Action.

42.     Pulte provided notice of the *Main Street Village* Action and tendered its claim for defense and indemnity under Defendants' Policies.

## Defendants Respond to the Action

43.     Each Defendant breached its duties by refusing to defend and indemnify Pulte. Instead, on information and belief, Defendants misrepresented policy provisions and/or material

Complaint – Page 7

facts related to coverage, failed in good faith to effectuate a fair settlement of the claim where liability is reasonably clear, failed to provide a reasonable explanation for the basis of their denial of Pulte's claim in relation to facts and applicable law, failed to honor Pulte's claim without conducting a reasonable investigation, failed to make prompt payment of Pulte's claim, and otherwise failed to respond to Pulte's claim.  As a result of Defendants' conduct, Pulte was forced to expend significant resources defending itself against the *Main Street Village* Action.

44.      On September 3, 2013, Pulte attended mediation in *Main Street Village* Action (the "Mediation").  Months beforehand, Pulte notified Defendants of the Mediation and requested their attendance and participation.  Defendants refused.  The *Main Street Village* Action settled shortly after the Mediation, with Pulte paying $5,401,232.00 for a settlement and release of the Homeowners' Association's claims.  As a result of Defendants' conduct, Pulte was forced to fund the entire settlement amount at its own expense.

45.      After the Mediation, Pulte again contacted Defendants and renewed its request for defense and indemnity.  Defendants either failed to respond to Pulte's renewed request or repeated their refusal to defend and indemnify Pulte.

46.      On November 18, 2013, Pulte filed a Petition in the 442nd Judicial District Court in Denton County, Texas entitled *Pulte Homes of Texas, L.P. v. Nortex Foundation Designs, Inc., et al.* Cause No. 2013-71515-431, asserting causes of action against each of the Subcontractors for: contractual indemnity, common law indemnity, breach of contract, and negligence.

## IV.  CONDITIONS PRECEDENT

47.      Pulte timely notified Defendants of its claims pursuant to the Texas Deceptive Trade Practices Act ("DTPA"), Section 17.505(a) of the Texas Business and Commerce Code,

and Section 541.154 of the Texas Insurance Code by letter dated March 24, 2017, and has

complied with all conditions precedent to the filing of this suit and discovery of additional

damages and attorney's fees.

## V. CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION

### (*Breach of the Duty to Defend*)

48.     Pulte realleges the allegations contained in paragraphs 1 through 47, inclusive,

and incorporates them by reference as though fully set forth herein.

49.     Pulte requested that Defendants defend and indemnify Pulte against the *Main

Street Village* Action as described more fully above.  Pulte has performed all obligations owing

under each of the policies, and has satisfied all relevant conditions precedent.

50.     Defendants failed to discharge their contractual duties to defend Pulte against the

*Main Street Village* Action.  More particularly, Defendants breached their contracts by (1)

wrongfully denying a duty to defend Pulte and (2) refusing to pay defense costs, even in those

instances where Defendants acknowledged their duty to defend Pulte.

51.     As a direct and proximate result of Defendants' conduct as alleged in this

complaint, Pulte has been damaged in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

### (*Breach of the Duty to Indemnify*)

52.     Pulte realleges the allegations contained in paragraphs 1 through 51, inclusive,

and incorporates them by reference as though fully set forth herein.

53.     Pulte requested that Defendants defend and indemnify Pulte against the *Main

Street Village* Action as described more fully above.  Pulte has performed all obligations owing

under each of the policies, and has satisfied all relevant conditions precedent.

54.     Defendants failed to discharge their contractual duties to indemnify Pulte against the *Main Street Village* Action.  More particularly, Defendants breached their contracts by wrongfully denying a duty to indemnify Pulte and refusing to fund the settlement.

55.     As a direct and proximate result of Defendants' conduct as alleged in this complaint, Pulte has been damaged in an amount to be proven at trial.

## THIRD CAUSE OF ACTION

### (*Declaratory Relief Regarding All Defendants' Duties* )

56.     Pulte realleges the allegations contained in paragraphs 1 through 55, inclusive, and incorporates them by reference as though fully set forth herein.

57.     An actual controversy has arisen and now exists between Pulte, on the one hand, and Defendants, on the other hand, in that Pulte contends that under the Policies, each Defendant owes a separate and independent duty to promptly and fully defend and indemnify Pulte in the *Main Street Village* Action.

58.     Pulte is informed and believes that Defendants contend otherwise.

59.     A declaratory judgment is both proper and necessary so that the respective rights, duties, and obligations of Defendants may be determined.

60.     Pursuant to Tex. Civ. Prac. & Rem. Code §37.001 et seq., Pulte requests a judicial determination as follows:

    a.     that each Defendant owes a separate and independent duty to defend Pulte against the *Main Street Village* Action;

    b.     that the scope of this duty is to provide Pulte with an immediate and full defense;

    c.     that the obligation of any one Defendant to provide Pulte with an immediate and

full defense is not diminished or reduced when other Defendants owe Pulte this

same duty;

d.   that the claims asserted by the Homeowners in the *Main Street Village* Action fall

within the scope of coverage under Defendants' Policies; and

e.   that each Defendant owes a separate and independent duty to indemnify Pulte

against the *Main Street Village* Action.

61.   Pursuant to Tex. Civ. Prac. & Rem. Code §37.009, Pulte requests that it recover

from each Defendant—jointly and/or severally—its reasonable and necessary attorneys' fees

incurred in this action.

## FOURTH CAUSE OF ACTION

### (*Texas Insurance Code Violations*)

62.   Pulte realleges the allegations contained in paragraphs 1 through 61, inclusive,

and incorporates them by reference as though fully set forth herein.

### VIOLATIONS OF SECTIONS 541.060(a)(1) AND 542.003(b)(1)

63.   In denying Pulte's tender for coverage, Defendants represented to Pulte that the

claims in the *Main Street Village* Action are not covered by their respective insurance policies

when, in fact, they are.  Furthermore, Defendants' undue delays, disparate treatment of Pulte vis-

à-vis Defendants' named insureds, Defendants' burdensome investigation tactics, and

Defendants' capricious and arbitrary coverage positions all amount to misrepresentation of

material facts and policy provisions relating to coverage for the *Main Street Village* Action in

violation of Section 541.060(a)(1) and 542.003(b)(1) of the Texas Insurance Code (the "Code").

*See* Tex. Ins. Code Ann. § 541.060(a)(1) ("[M]isrepresenting to a claimant a material fact or

policy provision relating to coverage at issue."); and Tex. Ins. Code Ann. §542.003(b)(1)

("[K]nowingly misrepresenting to a claimant pertinent facts or policy provisions relating to coverage at issue").

## VIOLATIONS OF SECTIONS 541.060(a)(2) AND 542.003(b)(4)

64.      The allegations in the *Main Street Village* Action were plainly covered by Defendants' respective insurance contracts.  Defendants' denials of Pulte's claim and their failure to properly and promptly investigate the damages alleged in *Main Street Village* Action constitute a failure to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the *Main Street Village* Action once Defendants' liability for these claims became reasonably clear.  In addition, Defendants' refusal to participate in the Mediation which led to the settlement of the *Main Street Village* Action demonstrate a lack of good faith and therefore violated Sections 541.060(a)(2) and 542.003(b)(1) of the Code.  *See* Tex. Ins. Code Ann. § 541.060(a)(2) ("[F]ailing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of: (A) a claim with respect to which the insurer's liability has become reasonably clear."); and Tex. Ins. Code Ann. §542.003(b)(1) ([N]ot attempting in good faith to effect a prompt, fair, and equitable settlement of a claim submitted in which liability has become reasonably clear").

## VIOLATIONS OF SECTIONS 541.060(a)(3), 541.060(a)(4)(A), 541.060(a)(4)(B), AND 542.003(b)(2)

65.      Defendants waited months before responding to Pulte's tender, while several Defendants failed to respond at all.  Furthermore, Defendants failed to promptly respond to Pulte's renewed requests for coverage after the *Main Street Village* Action settled.  These failures to acknowledge Pulte's requests for coverage with reasonable promptness violated Sections 541.060(a)(3), (a)(4), and 542.003(b)(2) of the Code.  *See* Tex. Ins. Code Ann. § 541.060(a)(3) ("[F]ailing to promptly provide to a policyholder reasonable explanation of the

basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or

offer of a compromise settlement of a claim."); Tex. Ins. Code Ann. § 541.060(a)(4) ("[F]ailing

within a reasonable time to: (A) affirm or deny coverage of a claim to a policyholder; or (B)

submit a reservation of rights to a policyholder."); Tex. Ins. Code Ann. § 541.060(b)(2)

("[F]ailing to acknowledge with reasonable promptness pertinent communications relating to a

claim arising under an insurer's policy").

### VIOLATIONS OF SECTIONS 541.060(a)(7), 542.003(b)(3), AND 542.055(a)(2)

66.     Defendants delayed, refused to consider relevant information, and otherwise

failed to conduct reasonable investigations in violation of Sections 541.060(a)(7), 542.003(b)(3),

and 542.055(a)(2) of the Code.  *See* Tex. Ins. Code Ann. § 541.060(a)(7); Tex. Ins. Code Ann.

§542.003(b)(3) ("F]ailing to adopt and implement reasonable standards for the prompt

investigation of claims arising under the insurer's policies."); Tex. Ins. Code Ann. §542.055(a)(2)

(prompt pay provisions relating to an insurers failure to timely commence investigation of a

claim).

### VIOLATION OF SECTION 542.003

67.     Despite Pulte's best efforts to resolve these coverage disputes, Defendants failed

to pay any of the amounts they owe.  This required Pulte to pay defense and settlement costs that

should have been covered by Defendants' Policies, thereby forcing Pulte to file suit to recover an

amount due under Defendants' Policies.  Thus, Defendants violated Section 542.003(b)(5) of the

Code.  Tex. Ins. Code Ann. §542.003(b)(5) ("[C]ompelling a policyholder to institute a suit to

recover an amount due under a policy by offering substantially less than the amount ultimately

recovered in a suit brought by the policyholder").

## VIOLATION OF SECTION 542.058'S PROMPT PAY REQUIREMENTS

68.     Section 542.058 of the Code requires an insurer to promptly pay claims as follows:

> If an insurer, after receiving all items, statements, and forms reasonably requested and required under Section 542.055, delays payment of the claim for a period exceeding the period specified by other applicable statutes or, if other statutes do not specify a period, for more than 60 days, the insurer shall pay damages and other items as provided by Section 542.060.

Tex. Ins. Code Ann. § 541.058.

69.     From 2010 through 2013, and again after Pulte renewed its request for coverage in 2016, Pulte gave each of the Defendants all of the information necessary to make their respective coverage decisions and to issue payment.  Because Pulte's claims remain unpaid, Defendants violated the 60-day prompt pay deadline.

70.     Accordingly, Pulte is entitled to recover from and against the Defendants—jointly and/or severally—Pulte's actual, special, incidental, and consequential damages resulting from these violations, along with court costs and attorneys' fees incurred in this action and any other relief determined to be proper by this Court, pursuant to Tex. Ins. Code §541.151, *et seq*. Additionally, since Defendants' actions were committed knowingly, Pulte is entitled to recover from and against the Defendants—jointly and/or severally—three times Pulte's actual damages, pursuant to Tex. Ins. Code §541.152(b).

## FIFTH CAUSE OF ACTION

### (*Tortious Breach of the Duty of Good Faith and Fair Dealing*)

71.     Pulte realleges the allegations contained in paragraphs 1 through 70, inclusive, and incorporates them by reference as though fully set forth herein.

72.     Under Texas law, Defendants owe Pulte a duty of good faith and fair dealing. Due to the special relationship that exists between an insurance company and its insured, Defendants are liable for breaching their duty of good faith and fair dealing when they fail to put Pulte's interests equal with or ahead of their own interests, or if they do anything to deprive Pulte of policy benefits.  This duty requires Defendants to attempt in good faith to effectuate a prompt, fair, and equitable resolution of a claim when the insurer's liability is reasonably clear, as it is with Pulte's claim for the benefits owed under Defendants' Policies.

73.     Rather than honor their obligations, Defendants instead sought to protect their own interests and have subordinated Pulte's interests by refusing to discharge contractual duties without reasonable grounds or good cause.

74.     In addition, Defendants acted with knowledge or reckless disregard of the harmful consequences to Pulte of their unreasonable conduct.

75.     Accordingly, Defendants unreasonably deprived Pulte of its rights and benefits under their policies.  For example:

76.     Pursuant to clearly applicable law, Defendants have a duty to defend additional insureds, like Pulte, for claims alleging the potential for liability arising out of the work of their named insureds.  Defendants understand and are fully aware of this duty.  Despite knowledge of this obligation, Defendants attempted to avoid their duty by taking arbitrary and capricious coverage positions.  More specifically, despite knowledge of the terms of their insurance

policies, additional-insured endorsements, the relevant case law, and the facts alleged in the *Main Street Village* Action, Defendants refused to acknowledge their duty to defend Pulte against the *Main Street Village* Action, even though most Defendants readily acknowledged this duty to their own named insureds in this case.  Defendants have adopted a pattern and practice of consistently and intentionally treating Pulte different than their named insureds with respect to: the degree of investigation undertaken, Defendants' coverage positions, and the amount of defense they are willing to provide.  Likewise, Defendants took coverage positions regarding Pulte's claims in the *Main Street Village* Action that are inconsistent with positions they took in other similar cases.  Defendants' decisions to deny or delay responding to Pulte's tenders were motivated by a desire to enhance unfairly their own profits by avoiding contractual obligations and ignoring the contractual rights and economic interests of Pulte.  Defendants acted in a deliberate and concerted fashion to achieve this self-serving economic objective.  Defendants' conduct in this regard tortiously breaches the duty of good faith and fair dealing owed to Pulte, and recklessly disregards Pulte's economic and property rights.

77.	Defendants' conduct as alleged in this Complaint is part of a pattern of unfair claims practices intentionally engaged in by Defendants to enhance unfairly their own profits by avoiding contractual obligations and ignoring the contractual rights and economic interests of Pulte and other additional insureds.  These systematic practices include: (1) wrongfully denying additional insureds coverage owed under policies; and (2) refusing to supply a full defense to additional insureds as required by law and instead trying to limit coverage obligations by funding only a small fraction of the additional insured's defense.

78.	As a direct and proximate result of Defendants' tortious breach of the duty of good faith and fair dealing, Pulte has suffered damages in an amount to be proven at trial,

including without limitation, legal costs incurred to obtain the benefits of the respective policies.

79.     In addition, Defendants' conduct as alleged in this Complaint is despicable and has been carried out in willful and conscious disregard of Pulte's rights and economic interests, and is malicious, fraudulent and oppressive.  Accordingly, Defendants' conduct entitles Pulte to punitive damages.

80.     Defendants' malicious, fraudulent, and oppressive conduct includes, for example, the following conduct:

a.     As described above, Defendants are fully aware of their duty to defend additional insureds like Pulte against claims alleging potential liability arising out of the work of their named insureds, but Defendants routinely attempt to avoid these obligations by treating additional insured differently from named insureds.  Defendants know this behavior violates the rights of additional insureds, like Pulte, but Defendants intentionally deprive their additional insureds of policy benefits in order to unfairly enhance their own profits.

81.     Finally, as described above, Defendants are fully aware of their duty to fully defend Pulte as opposed to only providing a proportional or partial defense based on the liability of their named insureds.  Defendants know that failing to provide Pulte with a full defense violates its contractual rights, but Defendants nonetheless intentionally disavow these duties in willful violation of their contractual duties.

## VI.  DAMAGES

82.     Pulte realleges the allegations contained in paragraphs 1 through 80, inclusive, and incorporates them by reference as though fully set forth herein.

83.     As a direct result of Defendants' wrongful actions, Pulte has been damaged in an amount exceeding $900,000 in defense fees incurred to defend the *Main Street Village* Action, as

well as an amount to be determined pursuing its indemnity rights.

84.      In addition, Defendants committed each and every wrongful act alleged in this Complaint knowingly and/or with malice aforethought.  As such Pulte seeks exemplary, punitive, and treble damages as authorized by Tex. Ins. Code Ann. § 541.152(b).

## VII.  ATTORNEYS' FEES

85.      Pulte realleges the allegations contained in paragraphs 1 through 84, inclusive, and incorporates them by reference as though fully set forth herein.

86.      Pulte retained the undersigned counsel to prosecute this suit.  Pursuant to Section 541.152 of the Texas Insurance Code and Sections 38.001 and 38.002 of the Texas Civil Practices and Remedies Code Ann., Pulte is entitled to recover any attorney's fees incurred in this lawsuit from Defendants.

## VIII.  JURY DEMAND

87.      Pulte demands a trial by jury in this case.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## IX.  <u>PRAYER</u>

Pulte prays for judgment against each Defendant as follows:

1. Actual and special damages;

2. Pre-Judgment and Post-Judgment interest at the highest rate allowed by law;

3. Attorneys' fees;

4. Taxable costs of court;

5. Punitive/Exemplary damages to be determined by the trier of fact;

6. Treble damages as authorized by Section 541.152(b) of the Texas Insurance Code;

7. An award of 18% interest on the amount of Pulte's claim as allowed by Section 542.060 of the Texas Insurance Code; and

8. For such other and further relief as the Court deems fair and proper.

Dated: August 31, 2017                            Respectfully submitted,


                                                  */s/ Amy R. Patton*
                                                  AMY R. PATTON
                                                  Texas State Bar No. 24000740
                                                  PAYNE & FEARS LLP
                                                  Attorneys at Law
                                                  4 Park Plaza, Suite 1100
                                                  Irvine, California 92614
                                                  Telephone: (949) 851-1100
                                                  Facsimile: (949) 851-1212

                                                  **Attorneys for Plaintiffs PULTE HOMES, INC.
                                                  and PULTE HOMES OF TEXAS, L.P.**

4810-9476-9987.7